**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DOREE L. BUCKLEY,**

       **Plaintiff,**

                                     **Civil Action 2:15-cv-2445**
      **v.**                           **Judge James L. Graham**
                                     **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Doree L. Buckley, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 9).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed her applications for benefits on March 17, 2011, alleging that she has been disabled since March 31, 2010, due to chronic renal failure, depression, anxiety, high blood pressure, and small vessel ischemic disease.  (R. at 306-09, 310-16, 348.)  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an

administrative law judge.  Administrative Law Judge I. K. Harrington ("ALJ") held a video

hearing on October 16, 2012, at which Plaintiff, represented by counsel, appeared and testified.

(R. at 113-32.)  Patricia B. Posey, a vocational expert, also appeared and testified at the hearing.

(R. at 133–42.)  On December 13, 2012, the ALJ issued a decision finding that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 145-59.)  On February 25, 2014,

the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision.  (R. at 5-11.)  Plaintiff then timely commenced the instant action.

      In her Statement of Errors, Plaintiff raises two contentions of error.  Plaintiff first asserts

that the ALJ erred in assessing the credibility of her allegations of pain.  In support of this

contention of error, Plaintiff asserts that the ALJ (1) inappropriately relied on what she perceived

as a lack of objective medical evidence, (2) misconstrued and exaggerated the activities Plaintiff

performed and the manner in which she performed them, and (3) failed to offer a sufficient

discussion of all of the factors she was required to consider in assessing the credibility of

Plaintiff's pain allegations.  In her second contention of error, Plaintiff maintains that the ALJ

failed to properly consider and weigh the opinion of her long-time treating therapist, Anna

Marcel de Hermanas.  According to Plaintiff, the ALJ's evaluation of Ms. de Hermanas' opinion

violated applicable regulations and SSR 06-3p, which, in turn, deprived her decision of

substantial evidence.

## II.   HEARING TESTIMONY

### A.   Plaintiff's Testimony

      Plaintiff testified at the administrative hearing that she was married and lived with

her husband. (R. at 113.) She has a driver's license and drives about twice a week. (R. at 113-14.) Plaintiff testified that she quit school at age sixteen, but later obtained her General Equivalency Diploma and also an associate degree from college. (R. at 128-29.)

Plaintiff stated that she feels she cannot work because she is sick to her stomach all of the time and cannot take care of people if she is sick. She also stated that her mental health impacts her ability to be employed because her memory is terrible. Plaintiff added that she gets fatigued such that she has to take breaks from cleaning.

Plaintiff represented that she had been treated for depression for "easily ten years," but with the current therapist for three of four years. (R. at 119.) She indicated that she saw her therapist every two weeks and also attended group therapy. Plaintiff stated that she took "a long list of medications" to help treat her depression, adding that they were initially effective, but that she presently wanted to stay in bed. (R. at 120.) She testified that she did not experience side effects from her depression medication. Plaintiff also indicated that she took medications for her stomach pain, but needed to be careful with taking over-the-counter medications because of her kidney problems. With regard to her kidney problems, Plaintiff indicated that she has not been hospitalized and that she has been instructed to maintain a healthy diet and not smoke. She admitted that she still smoked half a package of cigarettes per day.

Plaintiff testified that she last worked in 2007 and that her employment ended because the business closed. (R. at 115, 122.) She said that she collected unemployment compensation for "two and a half, three years." (R. at 123.) Plaintiff subsequently applied for disability benefits in March 2010.

3

Plaintiff testified that during a typical day, she will do dishes, laundry, and sometimes cook.  (R. at 125.)  She added that she takes many breaks.  (R. at 119, 125.)  Plaintiff noted that she sleeps often and believes it has to do with her depression.  Plaintiff said that she uses the computer about twice a week for searching the internet and occasionally playing a game.  (R. at 125.)  Plaintiff stated that when her "depression got to be really bad, [she] watched TV a good bit," but that at the time of the hearing, she hardly watched television.  (R. at 126.)  When asked what she does outside the house, Plaintiff testified that she is not very social and that she rarely has people over.  She indicated, however, that her children and grandchildren live nearby and that she visits with them once or twice a week.  (R. at 127-28.)  Plaintiff also testified that she is paid to babysit a neighbor's two-year-old child two days a week from 5:30 a.m. to 7:00 p.m.  (R. at 116-17.)

## B.      Vocational Expert Testimony

The vocational expert ("VE") testified that Plaintiff's past employment included a customer service representative, loan clerk, service/lead retail clerk, manager, teacher aide, and a janitor.  (R. at 134-38.)

The ALJ proposed a series of hypotheticals regarding an individual with Plaintiff's age, education, and work experience and the RFC he ultimately assessed.  The VE testified that such an individual could not perform Plaintiff's past work, but could perform approximately 570,500 medium and light exertion, unskilled jobs in the national economy such as a laundry worker, garment bagger, or a photo copy machine operator.  (R. at 138-40.)

4

### III.    RELEVANT RECORD EVIDENCE[1]

**A.    Kathryn Bobbitt, Ph.D.**

Dr. Bobbitt completed a mental status questionnaire in which she reported that she first treated Plaintiff in August 2009.  Dr. Bobbitt described Plaintiff as well groomed, tired, and as having inconsistent eye contact.  She noted that at times, Plaintiff had difficulty findings the words she wants and  forgets what she is saying.  She described Plaintiff's mood as severely depressed and irritable and noted that Plaintiff displayed a constricted affect.  Dr. Bobbitt further noted that Plaintiff did exhibit thinking disorders and was oriented times three.  She noted that Plaintiff had described avoidance behavior, including not going out or talking to people.  Dr. Bobbitt opined that Plaintiff would be capable of managing benefits.  She further opined that Plaintiff's memory is affected and that "loses thoughts" and "needs repetition."  (R. at 484.)  Dr. Bobbitt noted that Plaintiff has reported that she cannot remember what she has read and that she has to look up the names of her medications.  She also noted that at times, Plaintiff seems to dissociate or shut down.  (R. at 483-85.)  Plaintiff testified at the administrative hearing that she has never seen Dr. Bobbitt.  (R. at 124.)

**B.    Anna Marcel de Hermanas, LPCC**

Ms. de Hermanas, a mental health counselor, began treating Plaintiff in August 2009.[2] (R. at 621-23.)  Ms. de Hermanas found that Plaintiff suffered from depression and more recently anxiety that was worsened by the recent loss of her father and maternal grandmother.

---

[1]The Undersigned limits discussion to evidence bearing on the contentions of error Plaintiff raises in her Statement of Errors.  (ECF No. 13.)

[2]Ms. de Hermanas is associated with Dr. Bobbitt's office.  (*See* R. at 124, 483-85.)

Ms. de Hermanas noted Plaintiff may need a psychiatric referral.  (R. at 623.)  Ms. de Hermanas'

treatment notes show that she saw Plaintiff for therapy every week "to help stabilize and

decrease symptoms."  (R. at 653.)

On April 28, 2011, Ms. de Hermanas completed a Daily Activities Questionnaire in

which she reported that Plaintiff lived with her spouse, isolates, and is annoyed by others.  She

indicated that Plaintiff works on "completing one chore each day" and that she has no interest or

motivation in hobbies.  (R. at 487.)  Ms. de Hermanas noted that Plaintiff visits with her family

3-4 times per week, but reported having no friends.  She also noted that Plaintiff's adult children

live close "and come by a lot."  (R. at 486.)

On July 5, 2012, Ms. de Hermanas prepared an Assessment Update in which she noted

that Plaintiff was improving and working to resolve her anger and resentment issues.  She also

noted Plaintiff continued to see psychiatrist, Robert Sams, M.D., and was compliant with her

prescription medication.  Plaintiff complained of family and financial problems.  Ms. de

Hermanas assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55.[3]  (R. at

620.)

On October 1, 2012, Ms. de Hermanas signed a form in which she checked boxes

reflecting that she found that Plaintiff had marked limitations in her ability to follow work rules;

maintain attention and concentration; understand, remember, and carry out detailed, but not

---

[3]The GAF scale is used to report a clinician's judgment of an individual's overall level of
functioning.  Clinicians select a specific GAF score within the ten-point range by evaluating
whether the individual is functioning at the higher or lower end of the range.  A GAF score of
51-60 is indicative of moderate symptoms or moderate difficulty any moderate difficulty in
social, occupational, or school functioning.  *See* American Psychiatric Ass'n, Diagnostic and
Statistical Manual of Mental Disorders 33-34.

complex job instructions; understand, remember, and carry out simple job instructions; behave in

an emotionally stable manner; and relate predictably in social situations.  Ms. de Hermanas also

marked boxes reflecting her opinion that Plaintiff was extremely limited in her ability to

understand, remember, and carry out complex job instructions and in her ability to complete a

normal workday and work week without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods.  In

support of these findings, she stated that Plaintiff had anxiety, depression, mood swings, and

impaired self concept and energy levels.  She also noted that Plaintiff has difficulty getting out of

bed in the mornings and has low interest and motivation.  She opined that Plaintiff's physical

health problems contributed to her psychological illness.  (R. at 596-97.)

## C.    Robert Sams, M.D.

Plaintiff initially presented to psychiatrist Robert Sams, M.D., on April 6, 2011.  (R. at

548-52.)  Plaintiff complained of anxiety and depression.  (R. at 548.)  Dr. Sams diagnosed

major depressive disorder, recurrent and severe; panic disorder without agoraphobia; and

ADHD.  He assigned Plaintiff a GAF score of 50.  (R. at 550.)

Plaintiff continued to treat with Dr. Sams for medication management through at least

October 2013.  (R. at 13-21; 654-59.)  His treatment notes revealed that he regularly found

Plaintiff to be "neat" in appearance with a "pleasant" mood/affect; alert and oriented times three

cognition; possessing fair insight and judgment; and occasionally exhibiting depressed or

anxious behavior.  (R. at 14, 16, 18, 20 , 654, 656.)  Plaintiff was prescribed Adderall, Atenol,

Vistaril, Xanax, Cymbalta, and Lamictal.  (R. at 15, 17, 18, 21, 655, 657.)  Dr. Sams reported

that Plaintiff was receptive to instructions regarding medication regime and was compliant with medications.  (R. at 17, 655.)

**D.      James Spindler, M.S.**

Plaintiff was evaluated for disability purposes by Mr. Spindler on September 27, 2011. (R. at 524-29.)  Plaintiff drove alone to the evaluation.  She reported that she lives with her husband of 31 years.  (R. at 525.)  Plaintiff also reported that she has no history of inpatient psychiatric problems.  (R. at 526.)  Upon conducting a mental status examination, Mr. Spindler observed that Plaintiff was appropriately dressed with good grooming habits.  He found her to be cooperative, friendly, talkative, and noted that she maintained eye contact.  He observed that Plaintiff had no difficulty staying focused and described her as alert and oriented times two.  Mr. Spinder stated that Plaintiff "appeared to be mildly depressed."  (R. at 526.)  Plaintiff was able to recall five of five objects after five minutes and accurately recite six digits forward and four digits backward.  He opined that her judgment appeared adequate for most routine matters.  Mr. Spindler estimated Plaintiff's intelligence to be average.  (R. at 526-27.)

Plaintiff reported that she last worked in March 2007 and that she lost that job when the store closed.  She said that she has never had a major problem getting along with her supervisors or co-workers.  She told Mr. Spindler that she was preventing from securing employment because she gets sick to her stomach.  Plaintiff stated that she sometimes feels nauseas after eating a meal.  She described her energy level as average.  She indicated that she does not have a problem with controlling her temper and that her level of depression varies.  Plaintiff described herself as a person who likes being around others.  She also stated that she has constant anxiety about everything, but that she is able to go about the community as she needs to.

8

Plaintiff reported that her hobbies included listening to music, watching television, and buying and selling things on E-bay.  She indicated that she performs some household chores, including washing dishes, vacuuming, and laundry.  Mr. Spinder noted that Plaintiff socializes with four to five friends and prepares dinner with her husband.  (R. at 527.)

Mr. Spindler diagnosed depressive disorder and anxiety disorder and assigned a GAF score of 65.  (R. at 528.)  Mr. Spindler opined that based on Plaintiff's reported activities of daily living, her current symptoms did not appear to be seriously interfering with her daily routine.  He opined that Plaintiff "may have somewhat overstated her problems with anxiety and depression."  (*Id.*)

Mr. Spindler opined that "[i]t seems unlikely that [Plaintiff] would have a major [problem] understanding, remembering and carrying out instructions in most work settings."  (R. at 529.)  He also found her ability to maintain a level of attention and concentration to be sufficient for most work settings in view of her performance on the exam tasks.  Noting her past employment history and her expressed enjoyment of being around others, Mr. Spindler opined that Plaintiff "seems likely to respond appropriately to supervision and coworkers."  (*Id.*)  Finally, Mr. Spindler opined that Plaintiff "seems capable of handling the routine stressors of competitive employment," explaining that based upon what Plaintiff told him, she appears "to be dealing reasonably well with the stressors in her life."  (*Id.*)

## E.    State-Agency Evaluations

On May 13, 2011, after review of Plaintiff's medical record, Frank Orosz, Ph.D., a state-agency psychologist, assessed Plaintiff's mental condition and opined that Plaintiff had moderate restrictions in her activities of daily living; moderate difficulties in maintaining social

functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration.  (R. at 169.)  He further determined that the evidence did not establish the presence of the "C" criteria.  (R. at 169-70.)  Dr. Orosz found Plaintiff's allegations to be only partially credible.  (R. at 170.)

In assessing a mental residual functional capacity ("RFC") for Plaintiff, Dr. Orosz opined that she was moderately limited in her abilities to understand and remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others with out being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers with out distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to travel in unfamiliar places or use public transportation.   (R. at 172-73.)  Dr. Orosz concluded that Plaintiff appears capable of handling simple and routine tasks with no strict time or production standards and superficial, limited interaction with the public.  (R. at 173.)

On October 11, 2011, Mel Zwissler, Ph.D., reviewed the record upon reconsideration and opined that Plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration.  (R. at 216.)  Dr. Zwissler concluded that Plaintiff's basic memory processes are intact, as neither her long- nor short-term memory is reported to be impaired.  He found that Plaintiff's ability to understand and remember

complex or detailed instructions is likely to be somewhat limited due to depression, adding that she would be expected to understand and remember simple, one- and two-step instructions. He further opined that Plaintiff can perform simple, routine, repetitive work in a stable environment and can understand, retain, and follow simple job instructions, i.e., perform one- and two- step tasks. He also concluded that Plaintiff can make simple decisions and carry out short and simple instructions.

Dr. Zwissler next opined that although Plaintiff "somewhat limited" by depression, she remains able to maintain concentration and attention for reasonably extended periods of time when performing routine and repetitive work. He added that Plaintiff would be able to maintain regular attendance and be punctual within reasonable expectations when provided a consistent work schedule and that she would not require special supervision in order to sustain an ordinary work routine. Dr. Zwissler also opined that Plaintiff would be expected to complete a normal week without exacerbation of psychological symptoms when performing routine and repetitive work within a consistent work schedule. He assessed her impulse control as adequate. Dr. Zwissler concluded that although Plaintiff's stress tolerance is likely to be somewhat limited, she is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. He further found that although depression may result in some limitations with regard to social interaction and the ability to tolerate critical feedback, Plaintiff retains the ability to get along with others in the workplace, ask simple questions, accept instruction/advice, and interact on a superficial basis.

Dr. Zwissler described Plaintiff's activities of daily living and social skills as functional. He opined that she is capable of taking appropriate precautions to avoid hazards and can exercise

appropriate judgment in the workplace.  He also opined that Plaintiff can function in production-oriented jobs requiring at least some level of independent decision-making.  Finally, Dr. Zwissler opined that although Plaintiff may have some difficulty adjusting to sudden and unexpected changes, she can sustain an ordinary routine and adapt to routine changes without special supervision.  (R. at 219-20.)

## IV.   THE ADMINISTRATIVE DECISION

On December 13, 2012, the ALJ issued her decision.  (R. at 145-59.)  At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantially gainful activity since March 31, 2010, the alleged onset date of disability.  (R. at 150.)  The ALJ found that Plaintiff had the severe impairments of chronic renal insufficiency, gastroesphageal reflux disease, depression, and anxiety.  (R. at 151.)  She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

12

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the

sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has
> the residual functional capacity to perform medium work as defined in 20 CFR
> 404.1567(c) and 416.967(c) except is able to perform simple routine tasks with
> occasional interaction with the public and no fixed work production pace.

(R. at 154.)

In reaching this determination, the ALJ found that Plaintiff's allegations concerning the

intensity, persistence, and limiting effects of her symptoms were not credible. In making this

finding, the ALJ relied upon Plaintiffs' testimony, her activities of daily living, objective medical

findings, and treatment notes.

The ALJ assigned "significant weight" to the opinions of the state-agency reviewing

psychologists, Dr. Orosz and Dr. Zwissler, explaining that "they are specialists in mental

impairments with knowledge of the program, and familiar with the case record" and adding that

their "opinions are supported with explanation and reference to clinical findings as well as the

claimant's statements of activities of daily living." (R. at 157.)

The ALJ assigned "minimal weight" to the opinions of Ms. de Hermanas. (R. at 156.)

The ALJ pointed out that Ms. de Hermanas is not an acceptable medical source and concluded

that her extreme opinions were inconsistent with Plaintiff's reported "varied and robust activities

of daily living, which reveals she functions fairly well and is not as psychologically limited as

alleged." (R. at 156-57.) The ALJ also found that Ms. de Hermanas' opinion contrasts sharply

with the medical opinions of record, specifically the assessments of Drs. Orosz and Zwissler. (R.

at 157.)

Relying on the VE's testimony, the ALJ concluded that even though Plaintiff cannot perform her past relevant work, she can perform jobs that exist in significant numbers in the national economy. (R. at 157-59.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 159.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

14

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

The Undersigned first considers Plaintiff's assertion that the ALJ erred in assessing the credibility of her allegations of pain before turning to her contention that the ALJ erred in evaluating the opinion of Ms. de Hermanas.

### A.    Credibility Assessment

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).  First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.   20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v.  Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew,

15

resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted). The Sixth Circuit has held that "even if an ALJ's adverse

16

credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Here, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptom were not fully credible. The ALJ provided the following lengthy analysis in support of her credibility assessment:

> The objective findings do not support the extreme limitations alleged by the claimant and reveal she is not fully credible. An examination report from treating David Dembski, M.D., treating nephrologist, dated April 1. 2010, evidenced the claimant appeared healthy. An ultra ultrasound of her kidneys was unremarkable. Dr. Dembski indicated a magnetic resonance imaging (MRI) of her abdomen showed a small cyst on one kidney but otherwise the kidneys were normal without any evidence of obstruction. He advised the claimant to quit smoking. A follow up note from Dr. Dembski dated April 29, 2010, revealed the claimant's laboratory testing was negative. On May 26, 2010, the claimant underwent a kidney biopsy, which shoed moderate interstitial fibrosis and tubular atrophy. Dr. Dembski, M.D., noted the claimant's symptoms were consistent with the finding and that she had responded to treatment. An examination on June 24, 2010, Dr. Dembski noted the kidney were stable. He advised the claimant to quit smoking as it was a major risk factor for kidney disease. However, at the hearing, the claimant testified she still smokes about ½ pack of cigarettes a day.

> An office note[] from another treating source, Alan Spencer M.D., indicate the claimant was prescribed Phenergan and Nexium for stomach upset, which the claimant reported was effective in controlling her symptoms of GERD. Updated treatment notes of May 31, 2012, Dr. Spencer noted the claimant denied abdominal pain and was doing better.

> Regarding mental health, an initial psychiatric evaluation report from a treating psychiatrist Robert Sams, M.D. dated April 6, 2011, established the claimant complained of anxiety and depression. Subsequent treatment notes dated through September 2012, reflect mental status findings fair, with claimant worried over possibility of her husband losing his job. The medication Adderall was helpful in maintaining her concentration, indicating the treatment was effective. The claimant was noted to be receptive to instructions regarding medication regime and was compliant with medications, which indicates an ability to understand, comprehend

17

and carry-out instructions.  Collectively, the treatment notes do not corroborate the claimant's allegations of poor memory or difficulty focusing.

Furthermore, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disability symptoms and limitations.  At the hearing, the claimant testified she babysits from 5:30 a.m. to 6:30 and 7:00 p.m. two days a week.  She indicated sometimes cooks dinner.  The claimant testified she uses computer around twice a week, for searching the internet and occasionally playing a game.  She stated at first she watched television a good bit, but now she hardly ever watches television that she just has it on for sound.  She indicated her children and grandchildren they live nearby and she visits with them once or twice a week.  Next, in the consulting examiner report from Mr. Spindler, the claimant acknowledged the following activities: watches television, perform some household chores (i.e. washing dishes, vacuuming, and laundry), listens to music, watches television, using the computer, buying and selling items on the website E-bay.  She indicated she socializes with four to five friends, prepares dinner with her husband.  Mr. Spindler opined based on the claimant reported activities of daily living, her current symptoms did not appear to be seriously interfering with her daily routine.  He stated the claimant might be overstating her problems with anxiety and depression.  Collectively, the claimant's reported extensive activities described do not corroborate her allegations of disabling symptoms and functional limitations.

Additionally, the record indicates that the claimant stopped working due to a business-related layoff rather than because of the allegedly disabling impairments.  In this regard, the claimant testified she stopped working because the business closed and not due to any of her alleged impairments.  She testified she was laid off from her job in 2007, upon which she collected unemployment compensation through March 2010.  Indeed, the claimant's alleged onset date of disability March 31, 2010, is approximate to the ceasing of receipt of unemployment benefits and not from stopping work due to impairments.

(R. at 155-56 (internal citations to the record omitted).)

The Undersigned finds that the ALJ's detailed discussion of reasons for his credibility assessment amply supplies substantial evidence supporting his credibility finding.  Contrary to Plaintiff's assertion, the foregoing discussion reflects that the ALJ properly considered the requisite factors in assessing credibility.  For example, the ALJ properly relied upon the record evidence, including objective medical findings.  *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms).

18

The ALJ also reasonably relied upon Plaintiff's own statements about her activities, including her testimony at the hearing and her statements to Mr. Spindler to conclude that her activities—which include babysitting for thirteen to fourteen hours per day twice a week, performing household chores, socializing with friends and family, and buying and selling on E-bay, among others—undermine her allegations of disabling symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."); *Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

In addition, the ALJ properly considered Plaintiff's medications, their effectiveness, and treatment she received other than medication.  20 C.F.R. § 404.1529(c)(3)(iv) (relevant considerations include the "type, dosage, effectiveness, and side effects" of medications); SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received").  Relatedly, the ALJ pointed out that Plaintiff failed to comply with her physician's recommendation that she stop smoking.  *See, e.g.*, *Strachura v. Comm'r of Soc. Sec.*, No. 12-13078, 2013 WL 10059167, at *20 (E.D. Mich. Oct. 17, 2013) (finding that "the ALJ reasonably considered [the claimant's] failure to comply with treatment recommendations as part of his credibility assessment"); *Kinter v. Colvin*, No. 5:12-cv-

19

490, 2013 WL 1878883, at *9 (N.D. Ohio Apr. 18, 2013) (same); *Angelo v. Comm'r of Soc. Sec.*, No. 1:12-cv-169, 2013 WL 765646, at *8 (S.D. Ohio Feb. 8, 2013) (same).

The ALJ also reasonably considered that Plaintiff stopped working because the business closed rather than because of her impairments and that the timing of her alleged disability onset coincided with when she ceased collecting unemployment compensation. *See, e.g., Asbury v. Comm'r of Soc. Sec.*, No. 14-cv-13339, 2016 WL 739658, at *4 (E.D. Mich. Feb. 25, 2016) (finding substantial evidence supported ALJ's credibility assessment where, among other considerations, the ALJ found that the claimant's credibility was undermined because he "had ceased working on the alleged onset date not because of medical problems, but because his former employer had dissolved").

In sum, the Undersigned finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence. Accordingly, applying the applicable deferential standard of review, the Undersigned concludes that the ALJ's credibility determination was not erroneous.  It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED.**

## B.    Ms. de Hermanas

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

20

Mental health counselors like Ms. de Hermanas, however, are not "acceptable medical sources" and instead fall into the category of "other sources."  20 C.F.R. §§ 404.1513(d), 416.913(d).  Although the ALJ must consider opinions from "other sources" and "generally should explain the weight given," . . . "other-source opinions are not entitled to any special deference."  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); *see also Cole v. Astrue*, 661 F.3d 931, 938 n.4 (6th Cir. 2011) (noting "the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care").  Social Security Ruling 06-03p, upon which Plaintiff relies, states as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p, 2006 WL 2329939, at *6.

Here, the ALJ considered the assessment form Ms. de Hermanas completed, but assigned it "minimal weight."  (R. at 156.)  The ALJ explained as follows:

> The undersigned gives minimal weight to the opinions of Ms. Hermanas as she is not an acceptable medical source and therefore her opinions are not to be evaluated under (20 [C.F.R. §§] 404.1527 and 416.927).  Moreover, and as discussed above, the claimant noted varied and robust activities of daily living, which reveals she functions fairly well and is not psychologically limited as alleged.  Lastly, Ms. Hermanas opinion contrasts sharply with the medical opinions of record as shown in Drs. Orosz and Dr. Zwissler assessments.

(R. at 156-57.)

The Undersigned finds that the ALJ did not err in her consideration and weighing of Ms.

21

de Hermanas' opinions.  More specifically, the ALJ properly considered and reasonably concluded that Ms. de Hermanas' extreme opinions were inconsistent with Plaintiff's activities of daily living and the other medical opinions in the record.  *See* SSR 06-3p, 2006 WL 2329939. In addition to the opinions of Drs. Orosz and Zwissler that the ALJ cited in connection with her assessment of Ms. de Hermanas' opinions, the ALJ points out in an earlier portion of her decision that the treatment notes of Dr. Sams, Plaintiff's treating psychiatrist, do not corroborate a finding that Plaintiff has a poor memory and difficulty focusing.  (R. at 155.)  She also notes that the  consulting examiner, Mr. Spindler, found only mild limitations.  (R. at 156.)

Because the Undersigned finds that the ALJ did not err in his consideration and weighing of the opinion of Ms. de Hermanas' opinion, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VI.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

22

Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 8, 2016                                    *    /s/ Elizabeth A. Preston Deavers*
                                                        ELIZABETH A. PRESTON DEAVERS
                                                        UNITED STATES MAGISTRATE JUDGE